| | |
|---|---|
| | Case No. 18-cv-0257-BAS-JMA |
| SCOTT SCHUTZA, | |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| WALTER E. FIELDER, INC.; AVIAN AND EXOTIC ANIMAL HOSPITAL, Inc., *et al.*, | **[ECF No. 5]** |
| Defendants. | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Plaintiff Scott Schutza commenced this action against Defendants Walter E. Fielder, Inc. and Avian and Exotic Animal Hospital, Inc. (collectively, "Defendants"), alleging violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act. ("Compl.," ECF No. 1.) In April 2017, Plaintiff attempted to park at a parking lot that Avian and Exotic Animal Hospital, Inc. ("Hospital") allegedly leases from Walter E. Fielder, Inc. Plaintiff alleges he was unable to patronize the Hospital because the required accessible parking space did not meet the specifications required under the ADA. Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim as to

Plaintiff's ADA claim. ("Mot.," ECF No. 5-3.) Defendants also ask the Court to decline supplemental jurisdiction over Plaintiff's state-law claim. Plaintiff filed an Opposition to the Motion. ("Opp'n," ECF No. 13), and Defendants filed a Reply, ("Reply," ECF No. 14).

The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss.

I.   BACKGROUND[1]

Hospital operates an animal hospital on property owned by Walter E. Fielder, Inc. located at 1276 Moreno Boulevard in San Diego, California. (Compl. ¶¶ 3–5.) As part of its business, Hospital maintains a parking lot for its customers. (*Id.* ¶ 12.) Plaintiff is a paraplegic resident of California who uses a wheelchair for mobility. (*Id.* ¶ 1.) In April 2017, Plaintiff went to Hospital to seek a medical examination for his pet parrot. (*Id.* ¶ 10.) While Hospital had provided a reserved parking space for persons with disabilities, Plaintiff alleges that at the time of his visit the parking space did not meet the specifications required under the ADA Accessibility Guidelines. (*Id.* ¶¶ 13–20.) Plaintiff alleges the following violations:

(1) the access aisle adjacent to the parking space did not have the required "NO PARKING" lettering (*id.* ¶ 16);

(2) the access aisle's paint had faded so much that the aisle no longer served as a compliant access aisle (*id.* ¶ 15);

(3) the access aisle and parking stall were not level with each other (*id.* ¶ 17);

(4) the parking stall and access aisle had slopes greater than 2.1% (*id.* ¶ 18);

(5) the parking stall did not have the required "Minimum Fine $250" signage (*id.* ¶ 19);

(6) the parking stall did not have the required tow-away notice (*id.* ¶ 20); and

---

[1] The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of this Motion. *See Vasquez v. Los Angeles ("LA") Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

(7) at the time of the filing of the Complaint, none of these deficiencies had been remedied. (*Id.* ¶¶ 21–25.)

Plaintiff states these violations deterred him from patronizing Hospital and will continue to deter him until they are cured. (*Id.* ¶ 28.) Additionally, Plaintiff alleges he will return to the business to assess ongoing compliance and he will return as a customer once the violations are remedied. (*Id.* ¶ 32.)

## II. LEGAL STANDARDS

### A. **12(b)(1) – Lack of Subject Matter Jurisdiction**

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's jurisdiction over the subject matter of the complaint. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement" of alleging an actual case or controversy under Article III. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). No case or controversy exists if a plaintiff lacks standing. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

The "irreducible constitutional minimum" of Article III standing is comprised of three elements: (1) "the plaintiff must have suffered an 'injury in fact'" which is both "concrete and particularized" and "'actual or imminent, not 'conjectural' or 'hypothetical;'" (2) "there must be a causal connection between the injury and the conduct complained of" such that the injury is "'trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;'" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560–61 (alterations in original) (citations omitted). The party soliciting

federal jurisdiction has the burden of establishing these elements. *Id.*

B. **12(b)(6) – Failure to State a Claim**

A motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged.*" Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

III. **ANALYSIS**

Plaintiff's lone federal claim is an alleged violation of Title III of the ADA.

The ADA prohibits discrimination that interferes with disabled individuals' "full and equal enjoyment" of places of public accommodation. 42 U.S.C. § 12182(a). Under the ADA, unlawful discrimination occurs when a disabled individual is subjected "to a denial of the opportunity . . . to participate in or benefit from the . . . accommodations of an entity." *Id*. § 12182(b)(1)(A)(i). The only available remedy to private plaintiffs under the ADA is injunctive relief. *Id.* §§ 12188(a)(1), 2000a-3(a).

The ADA Accessibility Guidelines ("ADAAG") provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Pursuant to the ADAAG, any facility classified as a public accommodation under the ADA with one to twenty-five parking spaces must provide a minimum of one accessible parking space. 36 C.F.R. Pt. 1191 App. B § 208.2 (2014). An accessible parking space must comply with the specific guidelines of section 502 of the ADAAG, which include minimum width, signage, slope incline, and access aisle requirements. *Id*. §§ 208.2, 502.2, 502.5, 502.6.

### A. 12(b)(1) - Jurisdictional Challenge

Defendants argue that Plaintiff does not have standing to bring the ADA claim. Specifically, Defendants claim that Plaintiff has not alleged an injury-in-fact because Plaintiff did not sufficiently explain how any encountered barriers related to his disability. (Mot. 7.) Additionally, Defendants argue that Plaintiff has not pled sufficient facts to allege causation and redressability. (*Id.*)

To have standing, a plaintiff must allege injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. A disabled plaintiff need not show that a particular accessibility barrier completely precluded him from entering or using a facility. *Chapman*, 631 F.3d at 947. Rather, if he shows a barrier merely *interferes* with his right to "full and equal enjoyment" of the accommodation, that may be sufficient to show standing. *Id.* The technical standards for "full and equal

enjoyment" are outlined in the ADAAG. "[I]f a barrier violating these standards relates to a plaintiff's disability, it will impair plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element of *Lujan*." *Id.* Once a plaintiff establishes an injury-in-fact based on an ADAAG violation, "he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008).

Here, Plaintiff alleges that he visited Hospital in April 2017 to have his parrot examined. (Compl. ¶ 7.) During this attempted patronage, he encountered a barrier—the non-compliant parking space—that stood in the way of his "full and equal enjoyment" of Hospital. He specifically outlines the exact nature of the barrier: the accessible parking space deviates from ADA requirements in several ways. (*Id.* ¶¶ 13–25.) This barrier clearly relates to Plaintiff's disability because Plaintiff is a paraplegic who uses a wheelchair for mobility, and therefore required an accessible parking space. Plaintiff does not need to spell out in exacting detail how this violation directly relates to his disability in this case. The Court can infer, without having to assume any additional facts, the connection between a disability requiring a wheelchair and a violation of the standards that ensure wheelchair accessible parking spaces. Therefore, under the standard outlined in *Chapman*, Plaintiff has sufficiently alleged the injury-in-fact element of Article III standing.

Furthermore, Plaintiff alleges the non-compliant parking spot is provided by Defendants and therefore directly traceable to Defendants. (*See* Compl. ¶¶ 2–5, 12, 13.) Because the directly traceable injury could be redressed by a court order demanding compliance, Plaintiff has sufficiently alleged the "causation" and "redressability" elements of Article III standing. *See Doran*, 524 F.3d at 1042 n.5.

Defendants also argue that Plaintiff has not alleged standing to be entitled to injunctive relief. Specifically, Defendants claim that Plaintiff has failed to

sufficiently allege a likelihood of being harmed again because Plaintiff has not alleged facts to support his claimed intent to return to Hospital. (Mot. 9.)

Because the sole remedy under the ADA is injunctive relief, a plaintiff pursuing a claim under the ADA must demonstrate, in addition to the traditional elements of standing, a "real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. In the context of an ADA claim, a plaintiff can satisfy this requirement in two ways, (1) "by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility" or (2) by "demonstrating deterrence." *Chapman*, 631 F.3d at 944.

Plaintiff alleges that he intends to return to Hospital to have his parrot examined once the barriers are removed. (Compl. ¶ 32.) This allegation is more than a mere conclusory statement or label. Plaintiff provides a fact-based reason for his intent to return: He owns a parrot and Hospital is an avian hospital. Thus, he has established a plausible intent to return. Alternatively, Plaintiff also alleges facts—he is a wheelchair-bound paraplegic—to properly allege the non-compliant parking space deterred him from returning to Hospital. Plaintiff sufficiently alleges facts to show he has standing to request injunctive relief.

Because Plaintiff has sufficiently pled Article III standing and a "likelihood to be wronged again," this claim survives a 12(b)(1) motion to dismiss. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss under 12(b)(1) and turns to Defendants' challenge to the sufficiency of the claim.

### B.   12(b)(6) – Sufficiency Challenge

To prevail on an ADA claim, Plaintiff must allege three elements: "(1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) [he] was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Defendants challenge the sufficiency

of the pleadings as to the second element.[2]

Defendants first argue Plaintiff has not sufficiently pled facts that demonstrate Defendants own or control the parking lot where Plaintiff encountered the non-compliant parking space. (Mot. 8.) The ADA extends liability to "any person who owns, leases (or leases to), or operates a place of public accommodation" that discriminates against a person based on a disability. 42 U.S.C. § 12182(a). Here, Plaintiff alleges that Hospital operates an animal hospital located on property leased from Walter E. Fielder Inc. (Compl. ¶¶ 2–5.) Plaintiff also alleges that both Defendants provide a parking lot for patrons of the hospital. (*Id.* ¶ 12.) The Court can reasonably infer that Defendants own, lease, or operate the parking lot they provide. Therefore, Plaintiff has sufficiently pled this element.

Defendants also argue that Plaintiff has not sufficiently alleged that the Avian and Animal Hospital is a place of public accommodation. (Mot. 8.) Places of public accommodation include "professional office[s] of a health care provider, hospital[s], [and] other service establishment[s]." 42 U.S.C. § 12181(7)(F). Here, Plaintiff alleges that Hospital is open to the public, and Plaintiff went there to have his parrot examined. (Compl. ¶¶ 5, 10, 11.) The Court can reasonably infer from those facts that Hospital is indeed a service establishment that tends to birds and other exotic animals and is a place of public accommodation. At the current stage of litigation, Plaintiff has sufficiently stated a claim under the ADA. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss under 12(b)(6).

## IV. SUPPLEMENTAL JURISDICTION

### A. Legal Standard

The federal supplemental jurisdiction statute provides:

---

[2] Defendants also challenge the sufficiency of the complaint as to the third element, arguing Plaintiff has not properly pled that he was denied "full and equal access." However, the Court discussed in the preceding section that Plaintiff has properly alleged a violation of the ADAAG. Because a violation of the ADAAG necessarily satisfies the "denied public accommodation" element, Plaintiff has sufficiently alleged that element. *See Chapman*, 631 F.3d at 945.

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies. Under § 1367(c), a district court may decline supplemental jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). Underlying the § 1367(c) inquiry are considerations of judicial economy, convenience and fairness to litigants, and comity. "[I]f these are not present a federal court should hesitate to exercise jurisdiction over state law claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

When a court declines supplemental jurisdiction over a state-law claim pursuant to one of the first three provisions of the statute, the court need not state its reasons for dismissal. *Id*. However, when the court declines supplemental jurisdiction pursuant to section 1367(c)(4), the court must "articulate why the circumstances of the case are exceptional," and consider whether values of judicial economy, convenience, fairness, and comity provide compelling reasons for declining jurisdiction. *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1552 (9th Cir. 1994).

**B.  Analysis**

Defendants ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim on two grounds (1) Plaintiff's state law claims

substantially predominate over the federal claims, and (2) by bringing this action in federal court, Plaintiff is forum shopping to avoid California's heightened pleading standards in ADA cases. (Mot. 11–12.) To asses either of those requests requires a brief discussion of the pertinent parts of California's Unruh Act.

The Unruh Act provides in part that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that a violation of the federal ADA is a per se violation of the Unruh Act. *Id.* § 51(f). A key distinction between the Unruh Act and the ADA is the Unruh Act allows injunctive and monetary relief including statutory and actual damages, while the ADA only allows injunctive relief. *Compare* Cal. Civ. Code § 52(a), *with Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). An Unruh Act claim generally requires proof of intent. *Munson v. Del Taco, Inc.*, 208 P.3d 623, 624 (Cal. 2009). However, if a plaintiff establishes an ADA violation as the basis of his Unruh Act claim, he does not need to prove intent to be entitled to the Unruh Act's monetary damages. *Id.* at 625.

In recent years, in attempts to curb "abusive access litigation," the California Legislature has modified parts of the Unruh Act and passed other laws restricting its use. *Munson*, 208 P.3d at 633. In 2008, the Legislature passed sweeping reforms of the Unruh Act. New provisions provide for voluntary inspections and allow business owners to stay actions under certain conditions. *See id.*; Cal. Civ. Code § 55.54. Another notable provision limits statutory damages to one assessment per occasion of discrimination, regardless of the number of violations, whereas the statute was previously ambiguous as to how to calculate damages. *See* Cal. Civ. Code § 55.56(f) (limiting damages to "each occasion" that plaintiff was denied accommodations "and not upon the number of violations"). The 2008 reforms also stipulate that a plaintiff seeking monetary relief under the Unruh Act must have "personally encountered" the

1 alleged access barrier. Cal. Civ. Code § 55.56(b).

2 In 2012, the California Legislature enacted heightened pleading standards for Unruh Act cases. *See* Cal. Code Civ. Proc. § 425.50. Under these standards, plaintiffs that file Unruh Act cases in California state courts must (1) give specific details about the access barrier they encountered, (2) explain the way the access barrier denied them full and equal use or access, and (3) give specific dates when the incidents occurred. *Id.* § 425.50(a)(1)–(3). Additionally, all plaintiffs that file complaints alleging ADA violations must verify the complaint, and an attorney must sign every complaint to certify that, inter alia, the claim is proper and has evidentiary support. *Id.* at § 425.50(b)–(c). High-frequency plaintiffs[3] must also state: (1) that they are high-frequency litigants, (2) the number of complaints they have filed in the last twelve months, (3) their reasons for being in the geographic area at the time they encountered any barriers, and (4) the specific purpose they had in visiting the defendant's business. *Id.* § 425.50(a)(1)(A)(i)–(iv). Most recently, in 2015, the California Legislature passed a law that requires high-frequency litigants filing construction-related accessibility complaints to pay an additional $1,000 filing fee. Cal. Gov't Code § 70616.5.

Here, Plaintiff is a high-frequency litigant.[4] His only federal claim in this case is an ADA violation, onto which he has attached a state law claim. Under the ADA claim, Plaintiff is only entitled to injunctive relief. *Wander*, 304 F.3d at 858. The state claim, however, entitles him to actual and statutory damages. Cal. Civ. Code § 52(a). In short, Plaintiff gains no additional remedy by filing in federal court. However, by filing in federal court he does not have to pay the additional state-mandated $1,000 dollar fee and can circumvent California's heightened pleading

---

[3] A high-frequency plaintiff is a plaintiff that files a construction-related accessibility claim and "who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint." Cal. Code Civ. Proc. § 425.55.

[4] According to PACER, Plaintiff filed thirty-three ADA-related lawsuits in the twelve-month period immediately preceding the filing of this Complaint.

standards for Unruh Act claims. With this context in mind, the Court will now assess whether any § 1367(c) factors compel the Court to decline supplemental jurisdiction over Plaintiff's Unruh Act claim.

### 1. Section 1367(c)(2)

Defendants ask the Court to decline to exercise supplemental jurisdiction over the Unruh Act claim because it predominates over the ADA claim. (Mot. 12.) The Supreme Court held in *United Mine Workers of America v. Gibbs* that federal courts can decline supplemental jurisdiction over state claims that "substantially predominate . . . in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." 383 U.S. 715, 726 (1966). That holding was later codified into 28 U.S.C § 1367(c)(2). *Exec. Software*, 24 F.3d at 1556.

Plaintiff alleges that the barriers he encountered were intentional and that he experienced frustration that "possibly qualifies as an emotional distress injury." (Compl. ¶¶ 34, 49.) Both of those allegations are irrelevant to his federal claim because the ADA does not require intent and does not provide for damages. *Lentini*, 370 F.3d at 846 ("It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA."). However, intent and emotional distress allegations are invaluable to an Unruh Act claim, where intent is required to maintain a claim independent of the ADA and where emotional distress allegations could translate into actual damages.

Although Plaintiff maintains that the value of the emotional distress injury is below the statutory amount, (Compl. ¶ 49), Defendants still have a right to investigate the scope and legitimacy of those injuries. By alleging that Defendants caused an actual injury in the Complaint, Plaintiff puts that injury at issue and puts Defendants on notice that the injury is relevant to the claim. Likewise, by alleging intentional discrimination, Plaintiff is alerting Defendants and the Court that intent is at issue in the case. Both intent and actual injury are issues specific to the state claim and require application of state-law standards. *See Schutza v. McDonald's Corp.*, 133 F. Supp.

3d 1241, 1247 (S.D. Cal. 2015) (noting that alleging intentional discrimination in an ADA and Unruh Act complaint raises issues of state law). Thus, the scope of the issues in the Unruh Act claim predominates over that of the ADA claim.

On their own, these state-law issues may not *substantially* predominate over the federal issues. However, the Unruh Act also entitles Plaintiff to comprehensive monetary remedies, which include mandatory attorney fees, statutory damages, and actual damages. *Compare* Cal. Civ. Code §§ 52(a), 54.3(a) (providing mandatory fee-shifting to a prevailing plaintiff under the Unruh Civil Rights Act) *with* 42 U.S.C. § 12205 (providing for discretionary fee-shifting to the prevailing party under the ADA). This nexus of state-law issues and expansive monetary relief elevates the Unruh Act claim substantially over the ADA claim. S*ee Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224 (S.D. Cal. 2007) ("Given the disparity in terms of comprehensiveness of the remedy sought, state law claims substantially predominate over the ADA for purposes of 28 U.S.C. § 1367(c)(2)."); *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1131 (S.D. Cal. 2005) (holding that disparity between monetary damages and injunctive relief elevates state claims over federal claims); *see also Molski v. EOS Estate Winery*, No. CV 03-5880-GAF, 2005 WL 3952249, at *4 (C.D. Cal. July 14, 2005) (noting "[s]ince the state law claims provide for injunctive relief, the federal claim adds nothing to the lawsuit that could not be obtained in Superior Court").

Accordingly, the Court finds reason to decline supplemental jurisdiction under § 1367(c)(2). For reasons of completeness, the Court will also assess whether there are grounds to decline supplemental jurisdiction under § 1367(c)(4).

**2. Section 1367(c)(4)**

Defendants also ask the Court to decline to exercise supplemental jurisdiction over the Unruh Act claim pursuant to 1367(c)(4), specifically because Plaintiff is forum-shopping. (Mot. 12.) The Court can consider values of judicial economy,

convenience, fairness, and comity in deciding whether to decline to exercise supplemental jurisdiction. *See Exec. Software*, 24 F.3d at 1557.

Plaintiff rightfully argues that dismissing the state claims may lead to judicial inefficiency because he will have to bring two nearly identical suits in federal and state court. However, judicial economy is only one of several considerations the Court must weigh when deciding whether to exercise supplemental jurisdiction. *See id.* Courts have dismissed Unruh Act claims in ADA cases even if doing so would negatively impact judicial economy. *See Molski v. Kahn Winery*, 381 F. Supp. 2d 1209, 1212 (C.D. Cal. 2005) (dismissing Unruh Act claim and noting, "although principles of economy and convenience may not be fully served if the federal claim remains, the principle of comity strongly favors dismissing the state law claims"). Here, values of comity and fairness play a central role in the Court's analysis.

As a threshold matter, the Court finds unconvincing Plaintiff's fear that he may be disserved by "inconsistent orders and duplicative or conflicting remedies." (Opp'n 19.) Success on either or both the ADA claim in this Court or the Unruh Act claim in state court will lead to Plaintiff's primary desired outcome: the court will order the access barriers remedied. A failure of both claims is also a wholly consistent result. Thus, Plaintiff runs no risk of an inconsistent order or a conflicting remedy if the Court declines to extend supplemental jurisdiction. Of course, Plaintiff would not be entitled to state-law monetary damages if his case fails in state court and his case succeeds in this Court, but he would nonetheless receive the full remedies that are available under federal law. If Plaintiff's primary desired remedy is the monetary damages available under California law, he should have filed in a California court in the first place. Having addressed Plaintiff's arguments, the Court now addresses considerations of fairness and comity.

California has added additional monetary relief on top of the injunctive remedy provided in the ADA. As discussed above, for various and compelling reasons, California has also attached additional conditions that a plaintiff must satisfy to be

entitled to those additional remedies. Allowing Plaintiff to circumvent the higher pleading standard and fees simply by filing in federal court would offend the great care and energy the California Legislature has spent in crafting specified procedural laws for Unruh Act claims. It would be unfair to deprive Defendants of the added protections of those conditions, while still allowing Plaintiff to sue for additional damages not normally obtainable in federal court. *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (holding "as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim").[5] Moreover, federal courts are tasked with the goal of discouraging forum-shopping. *See Hanna v. Plumer*, 380 U.S. 460, 466 (1965). Here, Plaintiff is bootstrapping his Unruh Act claim onto an ADA claim with the sole purpose of choosing a federal forum over a state forum, likely to avoid California's procedural rules and fees. This, too, implicates considerations of fairness and comity. *Brick Oven Rest.*, 406 F. Supp. 2d at 1132; *see also EOS Estate Winery*, 2005 WL 3952249, at *1 ("When a plaintiff consistently attaches a federal claim to a suit for damages merely to get his case into federal court, a court must weigh heavily considerations of comity before proceeding to adjudicate the state claim." (internal quotation marks omitted)); *Molski v. Hitching Post I Rest., Inc.*, No. CV 04-1077SVWRNBX, 2005 WL 3952248, at *1 (C.D. Cal. May 25, 2005) (same). The particular type of forum-shopping present here is especially egregious because it

---

[5] Plaintiff argues that *Cuddeback*—a case where Plaintiff filed a nearly identical complaint—is distinguishable because, there, the motion to dismiss was unopposed and the Court calculated damages per offense instead of per occasion of discrimination. (Opp'n 20–22.) However, neither of those assertions make this Court's reasoning in *Cuddeback* any less persuasive when applied to this case. First, although the Court could have granted the defendant's unopposed motion in *Cuddeback*, *see* Civil Local Rule 7.1.f.3.c., the Court instead addressed the merits of the unopposed motion, and the lack of opposition is therefore unimportant. Second, the amount of damages stated by the Court in *Cuddeback* is immaterial to this case because the dollar amount of damages was only one factor, amongst several, the Court weighed in declining supplemental jurisdiction. Here, the Court finds that the mere availability of monetary remedies, regardless of the amount, factors into the Unruh Act claim's predominance over the ADA claim.

allows Plaintiff to avail himself in a federal courthouse of the entirety of California law that benefits him, while barring the parts of California law specifically enacted to protect his adversary. *See Schutza v. Lamden*, No. 3:17-CV-2562-L-JLB, 2018 WL 4385377, at *4 (S.D. Cal. Sept. 14, 2018) (following *Cuddeback* and holding "the discouragement of forum-shopping is a compelling reason to decline supplemental jurisdiction over plaintiff's Unruh claim").

Therefore, considerations of comity and fairness—in addition to the aforementioned predominance of the state law claim—compel the Court to decline supplemental jurisdiction over Plaintiff's state claims.

## V.   CONCLUSION & ORDER

In light of the foregoing, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff has sufficiently alleged both an ADA claim and standing to bring the claim in federal court. Therefore, Defendants' Motion to Dismiss the ADA claim is **DENIED**. However, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claim. Accordingly, Defendants' Motion to Dismiss Plaintiff's Unruh Act claim **GRANTED** and the claim is **DISMISSED** without prejudice. Defendants shall file an Answer or otherwise respond to the ADA claim no later than fourteen days from the filing of this Order.

**IT IS SO ORDERED.**

**DATED:** October 18, 2018

Hon. Cynthia Bashant
United States District Judge